312-0570 Komatsu America Corp. v. TSMC Counseling may proceed Thank you, good afternoon. May it please the Court, Counsel? My name is Steve Kleszak and I represent the employer Komatsu America in this appeal of the decision of the Illinois Workers' Compensation Commission. The issues on appeal are whether or not the need for knee replacement surgery is causally connected to a December 1, 2007 work accident, as well as whether a respondent is liable for incurred TTD, future TTD, and prospective medical. The standard of review for these issues is the manifest weight standard. Therefore, in order for the Commission's decision to be reversed, an opposite conclusion must be clearly apparent. In regard to the issue of causal connection, there is only one doctor that rendered an opinion regarding the issue of causal connection, and that's Dr. Nelson, who is the examining physician of the employer who is an orthopedic surgeon. Dr. Nelson testified that the need for the knee replacement surgery is not causally connected to the December 1, 2007 accident. Specifically, Dr. Nelson testified that Mr. Haynes had end-stage degenerative arthritis, which preexisted the work accident, and because of this arthritis, Mr. Haynes would have eventually needed a knee replacement, regardless of any activities or trauma. So, Counsel, you're very well acquainted with the standard here, the manifest weight standard. So tell us what the best evidence is for you, for your client, that was presented to the arbitrator that should convince us that the decision was against the manifest weight as it relates to causal connection. Well, the best evidence is Dr. Nelson's testimony, which is the only medical testimony in regards to causation. That's the best evidence, and it was in favor of the employer. That brings me to another point, but it is true that both sides stipulated the claimant suffered a knee injury on December 1, 2007, that arose out of and in the course of the employment, correct? Yes. That fact was never disputed. Correct. Is the law such that if you have a causal connection opinion against the claimant, no other causal connection opinions, except you have the claimant testify that they were free from pain, had no preexisting conditions, does the commission have to give more weight to the medical opinion than the claimant's testimony? Is there a case law that says that? Not specifically on point together, but there is a case law taken separately and applied to this case. I believe that I can answer the question, and the case law that I cited in my initial brief was the Kraft General Foods case that said an unrebutted sole medical testimony cannot be arbitrarily rejected. There is also testimony in the Raimondo case that self-serving testimony by a claimant alone is insufficient to meet the claimant's burden of proof. Well, who determines if it's self-serving? Would the commission have to make that determination? Well, I think you can use the definition of self-serving, which is testimony that serves the best, that serves the interest of the person who's testifying. So you are unable to unearth any cases that specifically stand for the proposition where you have expert medical testimony that says that the injury was not caused by the employment, but the claimant testifies as to the course of conduct, course of good health, the medical testimony must prevail. You can't set any case to that effect, can you? Well, the Pales Electric case says that, you know, the sole testimony, you can prove a case by the sole testimony of a claimant. However, you have to take the other evidence and see if that sole testimony stands up to the other evidence. So if you take the Kraft case, the Raimondo case, and you take the Pales Electric case and you put them all together, if you take those three cases, I think that stands for the proposition and answers your question that if you have one-sided medical evidence, that that one-sided medical evidence should rule and that should be followed by the commission where you have... The commission then cannot believe the claimant. They have to credit the medical evidence and that's the end of the case. According to what you're saying, then that's it. Claimant's testimony is not weighed in the mix. Well, if it wasn't self-serving, it would have... It will always be self-serving. Well, I mean, not necessarily. I mean, there could be testimony that is in their favor and not entirely self-serving. So I think in this case, there is a reason to question Mr. Haynes' credibility. And I point out in my brief that when he saw Dr. Capecci in July of 2009, according to the records of Dr. Capecci, he testified that he didn't return back to work since the accident dated December 1, 2007. And we know that's not true because we know he returned back to work for this employer in April 2008 and then shortly continued to work for five other employers for the next 14 months. He also testified on cross-examination. He admitted that he fell off a roof in 1990 and broke a bone and sought treatment for that. But then incredulously, he testifies that he doesn't know what body part he injured. So I think that, yes, if the commission doesn't believe the claimant, then the medical testimony should certainly rule the day. And I think in this case, you have a claimant who the credibility can be questioned and... Well, the commission obviously believed him because if what you say is true, you wouldn't be. The commission obviously didn't disbelieve him and believed the medical evidence. They wouldn't have ruled in his favor. Well, we don't know what the commission was thinking because the commission just rubber-stamped and affirmed what the arbitrator said. But obviously they believed the claimant. Well, we don't know if they even took that into consideration because they never rendered a decision. Now, the arbitrator never commented one way or the other in regards to Mr. Haynes' credibility and whether or not his testimony should be taken as truthful. And... Do they have to? I think in order to overcome the overwhelming medical evidence in favor of Komatsu, I think they're at least, at the very least, they're going to have to believe what Mr. Haynes testified to. Well, why wouldn't he fall under the argument that it's an aggravation of the existing condition? I mean, it's a fact question. If the claimant's disability is attributable to a degenerative condition only, the claimant should lose. Right? If, however, it's an aggravation of a preexisting condition, it's a fact question to the commission, and the claimant should prevail if the commission believes the claimant and accredits his testimony and his evidence. But the medical record in this case is Dr. Nelson's testimony that this condition is solely related to the preexisting condition and that the accident was a temporary aggravation of the preexisting arthritic condition. But they didn't credit, they didn't adopt that, or you wouldn't, the claimant wouldn't have prevailed, correct? Right. So, obviously, they felt that the claimant's testimony was credible and believable, notwithstanding weighing it against Nelson's testimony. I guess what I'm grasping, I'm not trying to persuade you, but I don't understand why the commission can't do that. I don't think the commission can do it in this case. I'm not saying you're, I don't disagree with you in a general statement. But I think in this case, I think the commission should not have done it because the only evidence is the self-serving testimony. There is a question regarding his credibility, and I don't think that that sole evidence stacks up to the medical evidence of Dr. Nelson. So I don't think they can do it in this case. The arbitrator in his decision also ruled that it was improbable that Dr. Barnhart would have mentioned the need for a future knee replacement after his recovery from the surgery in April 2008, had he had a complete resolution of his symptoms. But that's not, Dr. Nelson's medical opinion is not based on a complete resolution of the symptoms. Dr. Nelson's causation testimony is based on whether or not he improved after the surgery in January 2008, which the medical records show that he did, and Petitioner testified that he did as well. Dr. Barnhart did note that there was some cartilaginous damage, especially in the patellofemoral joint with a small area in the intertrochlear groove with bare bone, and that could cause future osteoarthritic pain and the need for knee replacement. But there's nowhere in Dr. Barnhart's records that this arthritic condition was either caused, accelerated, or aggravated by the action of December 1, 2007. I believe the arbitrators also improperly or misparaphrased Dr. Nelson's testimony regarding causation to support the arbitrator's decision. I think, again, it's clear that Dr. Nelson testified that the need for the knee replacement is not causally connected to the action of December 1, 2007. Therefore, if you take as a whole the evidence that's in favor of Komatsu and the evidence that's in favor of Mr. Haynes, I don't think that the testimony of Mr. Haynes is sufficient to justify disregarding Dr. Nelson's testimony. And I think an opposite conclusion is apparent, is clearly apparent, and that is that the need for the knee replacement surgery is not causally connected to the work accident. If you go into the issue of TTD, if you don't think that there's causation, then Komatsu shouldn't be responsible for the incurred TTD, nor should it be responsible for prospective medical. And in regards to the order that Komatsu pay ongoing TTD associated with a medical treatment, I cited in my briefs the Palos Electric case again for the proposition that liability cannot be based on speculation or conjecture. And I believe, assuming that he's going to be entitled to TTD at the time of the knee replacement is speculation and conjecture. From the record, we don't know what Mr. Haynes' work status is now. He very well may be employed by somebody who can't accommodate work restrictions as a result of a knee replacement. So I think in order, I think they overstepped what they can do by ordering future TTD. So I believe, based upon the evidence, I believe that the commission's decision is against the manifest way to the evidence, and I ask that it be reversed. Thank you. Thank you, counsel. Counsel, may I respond? May it please the court. Good afternoon. Your Honor, you asked the question, does the law require the commission to give more reliance to an IME physician than the testimony of the physician? And the answer is no. There is no case that says that. Counsel was attempting to argue to you that the Kraft General case stands for the proposition that, yes, you can, and you have to give more deference or credibility to that of the IME over the petitioner's testimony. But what he left out of that answer was the court said you can't rely on just the testimony if, in doing so, or in arriving at that conclusion, you arbitrarily dismiss or disregard or completely ignore an IME opinion. You can waive it. I think you also might have left out another fundamental problem. I believe the quote was the unrebutted, quote, unquote, testimony of the IME. That wouldn't be the case here because the claimant's testimony could be considered to be a rebuttal, couldn't it? You're correct. Any evidence that's presented which draws into question the IME's opinion is rebuttal testimony. Here, in the Kraft case, they're just saying, look, if you've got an IME opinion, you've got to weigh it just like you weigh all the evidence. And that's what they did here in this case. That's what the arbitrator, the commission, and the circuit court did. They weighed the opinions and they said, we're not completely disregarding and ignoring Nelson's opinion. We just don't think it's as credible. And here's why. Dr. Nelson's opinion was that the knee replacement was not related to the work injury because he was certain that the petitioner must have had symptoms in his knee and he's just lying about it prior to the work injury. Dr. Nelson admitted during testimony that he had no evidence whatsoever to support his belief that the petitioner had symptoms prior to the work injury. He admitted there's no medical treatment. There were no diagnostic films done. And the petitioner told him in the examination and then later in testimony that there were no symptoms before the work injury. He could point to nothing that contradicted the petitioner's testimony on that issue? He could not at all. And if you look at or you take that into account and you look at the Palos Electric case, that says you can't rely on a medical opinion that's based on speculation. Well, that's exactly what his opinion was based on. I mean, to speculate is to assume or believe or to think without evidence to support that. That's exactly what he had to do in order to arrive at the opinion that the work injury did not aggravate the preexisting condition. And let's look at this guy's knee. He's not a guy who had a terrible knee with end-stage osteoarthritis before this work injury. The MRI noted mild degenerative changes. Dr. Balos said they were mild. Dr. Barnhart, the treating surgeon, said they were minimal degenerative changes. This guy had a significant injury. He underwent surgery. He was completely asymptomatic before it. His symptoms, although they got better, and he agreed, they got a lot better after trial. They never went away completely. And then he needed more treatment. And on the day he was last seen prior to this gap, prior to being returned to work, the doctor said you're going to need a knee replacement at some point. That surgery, did it accelerate the need? The meniscal repair surgery that was done did accelerate the need for the knee replacement. Dr. Nelson actually confirms that that's correct. Dr. Nelson testified that when you go in and debride and repair a meniscal tear, you're taking out part of the meniscus. Now, he said, well, if you only took out a little bit, it might not hasten the need for a knee replacement. But he admitted he had no idea how much of the meniscal was taken out in Mr. Haynes' knee. But he did agree that when that is done, you can aggravate and accelerate a preexisting condition and hasten the need for the knee replacement. That's exactly what happened in this case. So I ask that you please affirm the arbitrator, the commissioner, and the circuit court and award the prospective medical treatment. If there's any other questions? I do have a question, and that is supposedly counsel offered up evidence of lack of credibility by the petitioner being in the form of, is it Dr. Cappucci? Dr. Cappucci's record. I think it's page three of the reply brief where he says that the petitioner told Dr. Cappucci that he had been unable to work due to knee pain since the accident on December 1, 2007. Is that what the record says? The record, and I will pull it. The record, Your Honor, indicates that when he was seen, he did report to the doctor that he was unable to work because of his knee pain. And that's consistent because he was not working at the time he was seen by Dr. Cappucci and had not been since he had been referred to him by Dr. Barnhart. But, and I will verify, but the record in my recollection does not say he had been off since the injury. And the petitioner never told Dr. Barnhart that. The petitioner admitted readily at trial. I was in a union. I worked for Komatsu. I left their employment, tried to get a better job. I went through, I think he said it's either four or five other employers all through the union doing the same type of work. There were no other injuries, nothing significant or anything that caused any additional injury or pain to his knee. But he had returned back to work. And at the time he saw Cappucci, he was not working. And if you'll give me just a moment, I'll pull that record here. He says the following. And this is the office visit of July 22, 2009. He has had trouble with his knee ever since a work-related injury on December 1, 2007. He is a boiler maker. Was employed at the time when he fell. Since that time, he has had severe, disabling, unrelenting pain. So it doesn't say disabling as in he did not work. He's characterizing it's so disabling it's affecting my activities of daily living or you could infer other things. But, no, it doesn't actually say I haven't worked. I never returned back to work. So that's a mischaracterization of what's in the record. Thank you. Any other questions? Thank you, Your Honors. Thank you, Counsel. I would respectfully argue that Dr. Nelson, as a medical doctor, has not been rebutted by another doctor. And I believe that's the thrust of that case law is that you have, if it's the sole doctor that has given the testimony, that that's where you cannot arbitrarily disregard that. Well, I don't think anybody arbitrarily disregarded anything. I mean, I think what she's saying is essentially correct. If you have the unrebutted testimony of a doctor standing alone, not contradicted by anything, you can't ignore it. But that isn't what the evidence was. But the case law doesn't say contradicted by any other piece of evidence. It says unrebutted. And I would assert respectfully that a rebuttal of a doctor's testimony has to come from testimony from another doctor. So, in other words, you would say that the commission could never decide a case based upon the chain of events and reject the decision or the opinion of an opposing physician? Well, I think that's where you can then have, you know, that would certainly be a reason not to go against the doctor's testimony. So it wouldn't be just completely disregarding it. I think you'd have something to say, Dr. Nelson said this, however, the chain of events says otherwise. So why isn't the claimant's testimony contrary to the doctor's the same? Well, again, I could point to the case law that says that it's self-serving testimony and that in and of itself is insufficient. So I think a chain of events is something stronger evidentiary-wise than self-serving testimony. Again, Dr. Nelson wasn't being speculative. He testified on medical and surgical certainty. He has experience in these cases. He's treated individuals with degenerative knees. And to characterize his arthritic condition as not severe, I think, is wrong. When Dr. Barnhart went into that knee in January 2008, he said that there was degeneration in the patellofemoral joint. He also said that there was bone on bone. There was in that intertracheal groove that there was bone, bare bone in that joint. So the MRIs might not have shown it, but Dr. Barnhart clearly described it in his operative report. And I think in regards to whether or not a meniscal surgery is going to accelerate the arthritic condition of the knee, I think Dr. Nelson was testifying in general that, yeah, any time you have knee surgery, you have a possibility of accelerating arthritic condition. But Dr. Nelson clarified his testimony by saying that the surgery took place in the meniscus that was away from the patellofemoral joint. He said that it really wasn't part of the surgery and that patellofemoral joint symptoms due to arthritis do not change because of meniscal surgeries. And finally, in regards to what Mr. Haynes told Dr. Cappucci, he said he was in severe disabling pain to Dr. Cappucci. However, that's not what the evidence shows. It shows that he was able to return back to regular work. There's no evidence that he had any problems doing his work. There is evidence that he did get better after the January 2008 surgery. And there is also evidence by Mr. Haynes' own testimony that while he was working the five other jobs, traveling down to Alabama making boilers for power plants, that his knee pain became worse as he worked those other jobs. Did opposing counsel read accurately from the record that portion that you were citing to in your reply brief? Yes, she did. Okay. And do you agree that that doesn't equate with petitioner telling Dr. Cappucci that he had been unable to work due to knee pain since the accident on December 1, 2007? I would agree to that, but I would also strictly point out that he was saying it was disabling. And I think disabling does, you know, affect an individual's ability to work, and he certainly wasn't disabled based on the other evidence. Thank you.